# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KAI GRUBER, Personal Representative**
**of the ESTATE OF CHRISTOPHER S.**
**GRUBER, on Behalf of the Next-of-Kin**
**of CHRISTOPHER S. GRUBER, Deceased,**

            **Judgment-Creditor,**

**v.**

**THE ESTATE OF RONALD MARSHALL,**

            **Judgment-Debtor,**

    **and**

**UNITED STATES AIRCRAFT**
**INSURANCE GROUP ("USAIG"), and**
**UNITED STATES AVIATION**
**UNDERWRITERS INC., as manager**
**of USAIG,**

            **Garnishees.**

**Case No. 16-cv-4152-DDC-GLR**

## MEMORANDUM AND ORDER

This matter comes before the court on Judgment-Creditor Kai Gruber's Motion to Remand.  Doc. 16.  Garnishees United States Aircraft Insurance Group ("USAIG") and United States Aviation Underwriters, Inc. have filed a Memorandum in Opposition to the Motion to Remand.  Doc. 19.  And, Judgment-Creditor Kai Gruber has filed a Reply.  Doc. 20.  After considering the parties' arguments, the court grants the motion and remands the case to the District Court of Riley County, Kansas.

I.      **Factual and Procedural Background**

The following facts are either taken from the Petition that Judgment-Creditor Kai Gruber, as personal representative of the Estate of Christopher S. Gruber, on behalf of the next-of-kin of Christopher S. Gruber ("Gruber Estate") filed in the District Court of Riley County, Kansas, on December 29, 2014 (Doc. 15-2 at 1–17), or from the state court record in that lawsuit (*id.* at 1–661).

On April 7, 2013, a plane piloted by Ronald Marshall crashed in Oklahoma, killing Mr. Marshall and his passenger, Christopher S. Gruber.  On December 29, 2014, Mr. Gruber's wife, Kai Gruber, filed a wrongful death action on her own behalf and for the Gruber Estate against the Estate of Ronald Marshall ("Marshall Estate") in the District Court of Riley County, Kansas. After a bench trial, District Judge Meryl D. Wilson of the District Court of Riley County entered a judgment against the Marshall Estate for $11,588,548.89.

The Gruber Estate, as judgment creditor, filed a Request for Garnishment[1] on August 4, 2016, naming the Marshall Estate as the Judgment Debtor and the Marshall Estate's insurers— USAIG and United States Aviation Underwriters, Inc.—as Garnishees.  That same day, the Riley County District Court issued an Order of Garnishment.  Counsel for the Gruber Estate served the Order of Garnishment on August 8, 2016.

On August 17, 2016, Garnishees served their Answer, denying that they possessed any property, funds, credits or other indebtedness belonging or owing to the Marshall Estate.  Their Answer thus denied that Garnishees were indebted to the Gruber Estate for the judgment in the

---

[1]      The parties agree that this garnishment action is considered a separate and distinct civil action, even though it was initiated in state court under the same case number as the underlying wrongful death action brought by the Gruber Estate against the Marshall Estate.  *See, e.g.*, *Smotherman v. Caswell*, 755 F. Supp. 346, 348–349 (D. Kan. 1990) (concluding that a garnishment proceeding is a separate and distinct civil action for purposes of removal); *Bridges v. Bentley*, 716 F. Supp. 1389, 1391–92 (D. Kan. 1989) (finding that "this garnishment action is independent from the primary liability action").

underlying lawsuit.  Kan. Stat. Ann. § 60-738(a) authorized the Gruber Estate to file "a reply disputing any statement in the answer of the garnishee" within "14 days after the garnishee makes the answer and sends it to the judgment creditor and judgment debtor."  So, any timely reply was due on or before August 31, 2016.

But, the Gruber Estate did not file a reply within the statutory time requirement.  Instead, on September 16, 2016, the Gruber Estate filed a Motion for Leave to File a Reply Out of Time to Garnishees' Answer.  The Gruber Estate alleged in its Motion for Leave that Garnishees negligently or in bad faith failed to settle the Gruber Estate's wrongful death claim against the Marshall Estate.  The Gruber Estate explained that the Marshall Estate had assigned a bad faith/negligent failure to settle claim to the Gruber Estate and, thus, the Gruber Estate was seeking payment of the judgment entered against the Marshall Estate from Garnishees.  The Gruber Estate conceded that it had failed to file a timely Reply to the Garnishees' Answer, and asserted that the omission constituted excusable neglect under Kan. Stat. Ann. § 60-206(b)(1)(B).

The Gruber Estate attached its proposed Reply to the Motion for Leave.  The proposed Reply states that the Gruber Estate contests Garnishees' contention that they are not indebted to the Gruber Estate.  The proposed Reply alleges that Garnishees mishandled the insurance claim arising out of Mr. Gruber's death in the airplane crash.  And, the proposed Reply accuses the Garnishees of acting negligently or in bad faith by failing to settle the claim within insurance policy limits.  Before the District Court of Riley County ruled on the Motion for Leave, Garnishees removed the action to this court on September 23, 2016.  Doc. 1.

## II.     Legal Standard

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction."  *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (quoting *Rural*

*Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012)).  Under 28 U.S.C. § 1441, a defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441.

The governing federal removal statutes require a defendant to remove an action "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b)(1).  But, "if the case stated by the initial pleading is not removable," the defendant must remove the action to federal court "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

The Tenth Circuit has explained that "[t]he failure to comply with these express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand."  *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir. 1999)); *see also Farm City Ins. Co. v. Johnson*, 190 F. Supp. 2d 1232, 1236 (D. Kan. 2002) (explaining that "the 30-day time requirement for removal is mandatory" but "not jurisdictional"); *Wichita Fed. Savings & Loan Assoc. v. Black*, No. 89-1089-K, 1989 WL 60141, at *1 (D. Kan. May 10, 1989) ("The time limitations established by § 1446(b) are mandatory and must be strictly applied.")

When determining whether the action is removable under federal statute, the removing party bears the burden to establish the propriety of removal from the state to the federal court.  *Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005); *Huffman*, 194 F.3d at 1079.

### III.    Analysis

In their Notice of Removal, Garnishees allege that their removal is proper because diversity jurisdiction exists under 28 U.S.C. §1332(a).  Although the Gruber Estate and the Marshall Estate are Kansas citizens, Garnishees assert that the court should align their interests on the same side of the caption for purposes of the diversity analysis.  It appears they are correct.  *See Smotherman v. Caswell*, 755 F. Supp. 346, 348 (D. Kan. 1990) ("In garnishment actions, where a garnishee has denied liability to the judgment debtor, the judgment creditor's and judgment debtor's interests are aligned on the same side for purposes of determining diversity of citizenship." (citation omitted)).  Garnishee United States Aviation Underwriters, Inc. is a corporation organized under New York law with its principal office in New York.  Garnishee USAIG is an unincorporated association of member companies managed by Garnishee United States Aviation Underwriters, Inc.  Garnishee USAIG maintains its principal office in New York.  Garnishees assert that neither USAIG nor any of its member companies are incorporated in Kansas or maintain their principal place of business in Kansas.  Garnishees thus maintain that neither of them is a Kansas citizen for diversity jurisdiction purposes.  Garnishees assert that because the Gruber Estate and Marshall Estate are Kansas citizens, Garnishees are citizens of other states, and the amount in controversy exceeds $75,000, diversity jurisdiction exists under 28 U.S.C. § 1332(a).

The Gruber Estate does not dispute the existence of diversity jurisdiction here.  Instead, it contests the timeliness of Garnishees' removal under 28 U.S.C. § 1446(b).  As explained above, 28 U.S.C. § 1446(b)(3) requires a party to remove an action to federal court within 30 days "after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. §

1446(b)(3).  Garnishees assert that the action first was removable on September 16, 2016, when

the Gruber Estate filed its proposed Reply contesting the Garnishees' Answer.  Garnishees thus

assert that they timely removed the action on September 23, 2016, within 30 days from when the

case was removable.  The Gruber Estate disagrees.  It contends that the removal clock began

ticking on August 17, 2016—when Garnishees served their Answer to the Order of Garnishment.

The Gruber Estate asserts that when Garnishees' Answer denied any liability on the Order of

Garnishment, it aligned the Gruber Estate and Marshall Estate on the same side of the caption for

the diversity jurisdiction analysis.  *See Smotherman*, 755 F. Supp. at 348.  When that happened,

diversity jurisdiction existed and the case was removable to federal court.  So, the Gruber Estate

contends, the September 23, 2016 removal occurred more than 30 days after Garnishees served

their Answer and thus it was untimely.  The court agrees.

The 30-day time period to remove a case commences when a pleading or some "other

paper" provides "clear and unequivocal notice" that the action is removable.  *Akin v. Ashland*

*Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998).  Here, Garnishees were served with the Order

of Garnishment[2] on August 8, 2016.  Arguably, the Order of Garnishment "provided

---

[2]     Garnishees argue that the Order of Garnishment is not an "initial pleading" for purposes of 28
U.S.C. § 1446(b)(3).  They contend that it is, by definition, an "order" and not a pleading.  But our court's
precedent rejects this proposition.
        Our court treats an Order of Garnishment as an initial pleading that can start the 30-day removal
clock under 28 U.S.C. § 1446 if it puts a party on notice that federal jurisdiction exists.  *See, e.g.*,
*Handshumaker v. Vangilder*, No. 15-1128-MLB, 2015 WL 5032054, at *2 (D. Kan. Aug. 25, 2015)
(holding that the 30-day time period for removal began when the insurance company received an order of
garnishment); *Wichita Fed. Savings & Loan Ass'n v. Black*, No. 89-1089-K, 1989 WL 60141, at *4 (D.
Kan. May 10, 1989) (concluding the same and citing *First National Bank in Pratt v. Leighty*, No. 86–
4290, slip op. at 4 (D. Kan. Oct. 10, 1986), where "Judge Rodgers . . . found that the service of an order
of garnishment on the defendant began the time period for removal.").
        Other courts have reached the same conclusion.  *See, e.g.*, *Elite Nurse Staffing, Inc. v. Am. Cas.*
*Co. of Reading, Pa.*, No. 2:10-cv-04210-NKL, 2010 WL 5300926, at *4 (W.D. Mo. Dec. 20, 2010)
(holding that a Missouri Garnishment Application and Order qualified as an "initial pleading" under 28
U.S.C. § 1446(b), and thus commenced the 30-day period because it provided sufficient notice of
diversity jurisdiction); *Hayes v. Pharmacists Mut. Ins. Co.*, 276 F. Supp. 2d 985, 988 (W.D. Mo. 2003)
(concluding that a Missouri Writ of Garnishment qualified as the "initial pleading" for removal purposes

[Garnishees] with adequate notice that a potentially removable claim was being asserted against [them]." *Wichita Fed. Savings & Loan Assoc. v. Black*, No. 89-1089-K, 1989 WL 60141, at *2 (D. Kan. May 10, 1989). The Order of Garnishment notified Garnishees that the Gruber Estate was seeking more than the $75,000 jurisdictional threshold. Doc. 19-1. It also identified the underlying wrongful death action. *Id.* And, as shown below, Garnishees were "fully apprised of the nature of this civil action," such that they had notice that an adverse party was asserting a claim against them. *See Black*, 1989 WL 60141, at *2–3 (holding that an "Order of Garnishment contained sufficient information from which [a garnishee] could have determined that potential diversity jurisdiction existed" and thus service of the Order triggered the 30-day removal time period).

But, Garnishees counter, when they were served with the Order of Garnishment, diversity of citizenship did not exist yet because it was not until the "garnishee has denied liability to the judgment debtor" that "the judgment creditor's and judgment debtor's interests are aligned on the same side for purposes of determining diversity of citizenship." *Smotherman*, 755 F. Supp. at 348. So, they argue, the case was not removable when the Gruber Estate served the Order of Garnishment. The Garnishees' argument is correct, but it not sufficient to carry the issue on which they need to prevail because the case was removable upon service of Garnishees' Answer.

Under 28 U.S.C. § 1446(b)(3), the Answer was "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." As applied to the facts here, the Garnishees' Answer provided sufficient information for them to ascertain that they had a removable dispute on their hands. It realigned

---

under 28 U.S.C. § 1446(b) because the "Writ puts the garnishee on notice of the proceeding, identifies the opposing party, sets forth the basis for the proceeding, and specifies the amount sought . . . [and it] also warns the garnishee that failure to respond may expose it to liability for the full amount sought. Thus, the writ effectively commences the proceedings just as a complaint/petition would; both documents identify the claimant, the basis for the claim and (in most cases) the amount sought.").

the parties for the diversity analysis.  It thus triggered commencement of the 30-day removal clock when Garnishees served that Answer on August 17, 2016.  Regrettably, for Garnishees, they removed the action more than 30 days later.  So, their removal is untimely.

Garnishees counter this math with a second argument.  They assert that the 30-day time period for removal did not begin running until a pleading first asserted a bad faith claim. Garnishees contend that none of the pleadings put them on notice of the Gruber Estate's bad faith claim until the Gruber Estate filed the proposed Reply on September 16, 2016.  It is true, as Garnishees assert, that the Order of Garnishment alleged no facts to support a bad faith claim against them.  But, it is not the pleadings alone that control removability.  As 28 U.S.C. § 1446(b)(3) provides, the 30-day removal clock commences "after receipt . . . of a copy of an amended pleading, *motion, order or other paper* from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3) (emphasis added); *see also Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999) (holding that deposition testimony provided sufficient notice that the amount in controversy exceed the jurisdictional limit and thus triggered the 30-day time period for removability).

As described below, "other papers" enabled Garnishees to ascertain information sufficient to trigger the 30-day period for removal.  And, while none of the pleadings filed before the proposed Reply explicitly asserted a bad faith claim, Garnishees cannot claim that they lacked adequate notice of such a claim.  The record belies any such assertion.

Garnishees concede that they knew about and, indeed, were involved in the underlying wrongful death lawsuit.  *See* Doc. 19 at 2.  Garnishees explain that they "made available their policy limits of $100,000, contingent upon the release of the insured, and this was confirmed in writing by counsel for [the Gruber Estate] on May 2, 2014."  *Id.* (citing Doc. 17-4).  The

settlement offer also was confirmed in writing by the Vice President of USAIG.  Doc. 17-4 at 2.
The Gruber Estate did not accept this offer.  And, in a June 29, 2015 letter to counsel for the
Marshall Estate, counsel for the Gruber Estate asserted that USAIG "negligently and in bad faith
breached its contract with its insured [the Marshall Estate] by not completing its investigation
and evaluation in a timely manner and by not offering the policy limits to Chris Gruber's family
in a timely manner following his death in the April 7, 2013 plane crash."  Doc. 17-5 at 1.

   The Gruber Estate and the Marshall Estate eventually entered into an "Assignment of
Claims Against [USAIG] and Covenant Not To Execute."  Doc. 17-7 ["the Assignment
Agreement"].  In this Assignment Agreement, the Marshall Estate assigned its claims against
USAIG for the insurer's allegedly negligent and bad faith failure to settle the underlying lawsuit
brought by the Gruber Estate.  *See* Docs. 17-6, 17-7.  In May 2016, counsel for the Marshall
Estate asked his counterpart for the Gruber Estate if he objected to providing a copy of the
Assignment Agreement to USAIG because "[t]he lawyer representing USAIG with respect to the
bad faith claim" had asked for it.  Doc. 17-8 at 2.  The Gruber Estate's counsel asked who "the
USAIG 'bad faith claim' attorney" was, and the Marshall Estate's counsel provided contact
information for Joe McDonough, "the attorney handling the bad faith claim matter."  *Id.* at 1.

   On August 17, 2016, Mr. McDonough sent a letter to counsel for the Gruber Estate.  Doc.
17-10.  It attached the Garnishees' Answer denying liability.  *Id.* at 1.  The letter also discussed
the history of settlement negotiations with the Gruber Estate, asserting that "USAIG remains
committed to pay the Policy limit of $100,000" to the Gruber Estate.  *Id.* at 2.  This record shows
that Garnishees received sufficient notice that the Gruber Estate was asserting a claim against
them and that this claim was removable to federal court.

Our court reached the same conclusion in a garnishment action arising from somewhat similar circumstances.  In *Wichita Federal Savings and Loan Association v. Black*, a garnishee insurance company removed a garnishment action to this court.  1989 WL 60141, at *1.  The plaintiff/judgment creditor moved to remand the action, asserting that the removal was untimely under 28 U.S.C. § 1446.  *Id.*  Judge Kelly found that the order of garnishment served on the garnishee provided "adequate notice that a potentially removable claim was being asserted against it."  *Id.* at *2.  And, the garnishee's removal of the action more than 30 days after service of the garnishment order "require[d] granting the motion to remand."  *Id.*

The garnishee asserted several of the same arguments against remand asserted here. Judge Kelly rejected them all.  The court finds those arguments unavailing for the same reasons Judge Kelly did.  First, the *Wichita Federal Savings* garnishee asserted that the garnishment order was not the "initial pleading" that commenced the 30-day removal clock because it did not set forth any "controversy" between the judgment creditor and the garnishee.  *Id.* at *2.  Instead, the garnishee argued, no controversy existed until the judgment creditor filed a reply to the garnishee's answer.  *Id.*  Judge Kelly disagreed.  He reasoned that the garnishment order "not only stated that [the judgment creditor] was seeking an amount in excess of the . . . jurisdictional amount in diversity cases, it also designated the civil action underlying the garnishment."  And, the garnishee knew about the nature of this civil action and the diverse citizenship of the parties in that action.  *Id.*  Thus, Judge Kelly concluded, "the Order of Garnishment contained sufficient information from which [the garnishee] could have determined that potential diversity jurisdiction existed . . . ."  *Id.* at *3.

Second, Judge Kelly determined that the garnishee had received notice of diversity jurisdiction not only from the garnishment order but also from its "aware[ness] of the status of

the underlying litigation and of the litigants" and its "deep[ ] involve[ment] in the progress of the

underlying . . . civil action." *Id.* at *3–4.  Judge Kelly described how the garnishee was served

with pleadings from the underlying civil action.  *Id.* at *4.  Judge Kelly also described

communications about the underlying matter between the garnishee's counsel and the judgment-

debtor's counsel.  *Id.*  Judge Kelly concluded that the garnishee's knowledge of the underlying

action supplied it with "abundant[ ]" information from which it could have determined that

diversity jurisdiction existed.  *Id.* at *3.

Finally, the garnishee in *Wichita Federal Savings* argued that the garnishment order did

not qualify as an "initial pleading" under § 1446(b).  *Id.* at *4.  Judge Kelly rejected this idea.

He concluded that receipt of the garnishment order provided sufficient notice that an adverse

party was asserting a claim against the garnishee.  *Id.*  Thus, Judge Kelly held the garnishment

order constituted the initial pleading that commenced the 30-day removal period.  *Id.*  Because

the garnishee had failed to remove the action within 30 days from its receipt of the garnishment

order, Judge Kelly remanded the action to state court.  *Id.*

Judge Kelly's analysis applies equally to the facts here.  Garnishees received an Order of

Garnishment providing notice of a claim against them exceeding the jurisdictional limit.  But,

diversity of citizenship did not exist until Garnishees served their Answer denying liability and

thus requiring realignment of the parties for diversity purposes.  When Garnishees served their

Answer on August 17, 2016, the case was removable, and the 30-day removal clock commenced.

Garnishees also had notice of the case's removability from their knowledge about the underlying

wrongful death lawsuit.  Garnishees had communicated with the Gruber Estate about settling the

matter within the policy limits.  Garnishees also engaged counsel who requested a copy of the

Assignment Agreement that explicitly assigned the Marshall Estate's bad faith claims to the

Gruber Estate.  And, the same counsel later served the Answer on the Gruber Estate in the garnishment action.  Under these facts, Garnishees had sufficient notice that diversity jurisdiction existed when they served their Answer on August 17, 2016.  Garnishees' failure to remove the case within 30 days from then renders the removal untimely.

Garnishees assert two final arguments against remand.  The court finds both unavailing.  First, Garnishees argue that the Answer did not realign the parties automatically.  Instead, Garnishees contend, diversity of citizenship is not established until the court enters an order realigning the parties.  Because the court has not yet entered such an order,[3] Garnishees argue that diversity of citizenship does not exist and thus the time for removing the case has not expired.

Garnishees cite four cases trying to support the proposition that realignment in a garnishment action requires a court order to establish diversity.  None support this proposition.  *See*, *e.g.*, *Handshumaker v. Vangilder*, No. 15-1128-MLB, 2015 WL 5032054, at *3–4 (D. Kan. Aug. 25, 2015) (concluding that the judgment-debtor was a nominal party whose consent was not required for removal and denying the motion for remand because the removal requirements were satisfied; *after* reaching this conclusion, Judge Belot granted the garnishee's motion to realign the parties; Judge Belot never ruled that the parties must seek realignment before diversity is established); *Meyer v. Fink*, No. 14-CV-4074-JTM-GLR, 2014 WL 5149219, at *2 (D. Kan. Oct. 14, 2014) (granting a motion to regard judgment debtor as a nominal party to establish that his consent was not required for the earlier removal of the case based on diversity jurisdiction; the court did not rule that an order realigning the parties is required before diversity exists); *Kemp v. Hudgins*, No. 12-CV-2739-JAR, 2013 WL 2631634, at *4 (D. Kan. June 12, 2013) (denying

---

[3]     Garnishees have filed a motion seeking realignment of the parties.  Doc. 2.  This motion is moot in light of this Order remanding the case to state court.

motion to remand because the judgment-creditor and judgment-debtor "are realigned" on the same side of the caption for diversity purposes when the garnishee denies liability and thus removal was proper, but making no finding that an order realigning the parties is required before diversity is established); *Graphic Scanning Corp. v. Yampol*, 677 F. Supp. 256, 258 (D. Del. 1988) (holding in a shareholder derivative action (not a garnishment action) that the 30-day removal time period commences when the court grants a motion for realignment and not when the motion to realign the parties is filed).

Second, Garnishees argue that a reply starts the 30-day removal clock, not an answer, and they cite an Oklahoma case as support. *See* Doc. 9 at 14–15 (citing *Thames v. Evanston Ins. Co.*, No. 13-CV-425-TCK-PJC, 2014 WL 991722 (N.D. Okla. Mar. 13, 2014)). The court already has explained why the Answer here provided sufficient notice to Garnishees that the case was removable and thus triggered the 30-day removal period. And, the Oklahoma case does not change this conclusion because it involved garnishment under an Oklahoma statute that differs from the Kansas garnishment action here.

In *Thames*, a judgment creditor initiated a garnishment action in Oklahoma state court against a garnishee by filing a Garnishment Affidavit under Okla. Stat. tit. 12, § 1172. 2014 WL 991722, at *1, 4. The garnishee filed an Answer denying liability to the judgment creditor. *Id.* at *1. The judgment creditor then filed an Application for Hearing to Determine Insurance Coverage. *Id.* at *1. Twenty-six days later, the garnishee removed the case to federal court based on diversity jurisdiction. *Id.* The judgment creditor moved to remand, asserting that removal was untimely under 28 U.S.C. § 1446(b). *Id.* The court disagreed. It concluded that the 30-day removal period did not commence until the judgment creditor filed its Application for

Hearing to Determine Insurance Coverage.  But, it based this conclusion on Okla. Stat. tit. 12,

§ 1177.  It provides:

> The answer of the garnishee shall in all cases be conclusive of the
> truth of the facts therein stated . . . unless the judgment creditor
> shall . . . serve upon the garnishee or garnishee's attorney of record
> . . . a notice in writing that the judgment creditor elects to take
> issue with the garnishee's answer; *in which case, the issue shall
> stand for trial as a civil action in which the affidavit on the part of
> the judgment creditor shall be deemed the petition and the
> garnishee's answer the answer thereto.*

*Id.* at *4 (quoting Okla. Stat. tit. 12, § 1177).  The Oklahoma federal court concluded that Okla.

Stat. tit. 12, § 1177 "creates an ambiguity . . . whether an action or proceeding will even exist

after the garnishee files an answer to the garnishment affidavit."  *Id.*  Thus, the court observed:

"It serves neither the parties nor Oklahoma federal district courts for garnishment proceedings to

be removed before the judgment debtor has elected to take issue with the garnishee's answer."

*Id.*  The court reasoned that "[b]eginning the removal clock at the time the garnishment affidavit

is served could force a garnishee to remove the proceeding before the judgment creditor has

made such an election, essentially removing a case that could cease to exist if the judgment

creditor chooses not to make such an election."  *Id.*  The court thus concluded that the removal

clock began when the judgment creditor filed the Application for Hearing to Determine

Insurance Coverage, and removal was timely.

      In contrast, the Kansas statutes that apply to the garnishment action here contain no such

ambiguity.  The Kansas statutes do not include any provision establishing that the answer to a

garnishment order is "conclusive" unless the judgment creditor files a reply or some other notice

disputing the answer.  And, the Kansas statutes contain no language similar to the Oklahoma

statute that creates an ambiguity whether a garnishment action even exists after the garnishee

files its answer.  Instead, Kan. Stat. Ann. § 60-734(c) provides that a garnishment order remains

in effect in Kansas until either:  "(1) The judgment is paid; or (2) the garnishment is released."
Kan. Stat. Ann. § 60-734(c).

Also, the holding in the Oklahoma case—one based on an Oklahoma statute not at issue
in this Kansas garnishment action—conflicts with our court's conclusion that, in Kansas, a
garnishment order—not the reply—serves as the "initial pleading" sufficient to commence the
removal clock.  *See supra* note 2.  Following our court's precedent, the court also concludes that
the garnishment order serves as the "initial pleading" for calculating the time for removal under
28 U.S.C. § 1446(b).  Here, diversity jurisdiction was not ascertainable from the initial pleading,
*i.e.*, the Order of Garnishment, because diversity of citizenship did not exist until Garnishees
served their Answer denying liability, and, thus, realigning the parties for diversity purposes.
The 30-day removal clock commenced when Garnishees served their Answer on August 17,
2016.  Garnishees removed the action to federal court more than 30 days later.  Garnishees'
removal thus was untimely.  And, this untimeliness makes remand to state court the proper
result.  *See Huffman*, 194 F.3d at 1077; *see also Black*, 1989 WL 60141, at *2, 4.

## IV.    Conclusion

For the reasons explained, Garnishees' removal of this action was untimely under 28
U.S.C. § 1446(b).  Because Garnishees failed to satisfy the procedural requirements for removal,
the court remands the action to state court.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Judgment-Creditor's
Motion to Remand (Doc. 16) is granted.  The Court remands the case to the District Court of
Riley County, Kansas.

**IT IS FURTHER ORDERED THAT** the Garnishee's Motion to Disregard Nominal Party and Realign Parties (Doc. 2) and the Judgment-Creditor's Motion for Leave to File a Reply to Garnishees' Answer Out of Time (Doc. 6) are moot.

**IT IS SO ORDERED.**

**Dated this 17th day of January, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**